**CHRISTENSEN JAMES & MARTIN, CHTD.**
Kevin B. Christensen, Esq. (175)
Wesley J. Smith, Esq. (11871)
Kevin B. Archibald, Esq. (13817)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Facsimile: (702) 255-0871
Email: kbc@cjmlv.com, wes@cjmlv.com, and kba@cjmlv.com
*Counsel for Plaintiff Board of Trustees of the Southern Nevada Glaziers and Fabricators Pension Trust Fund*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| BOARD OF TRUSTEES OF THE SOUTHERN NEVADA GLAZIERS AND FABRICATORS PENSION TRUST FUND,<br><br>Plaintiff,<br><br>vs.<br><br>MARC ANTHONY GLAZING CONTRACTOR, INC., a California corporation; JOE MANUEL LEON, III, an individual; BUSINESS ALLIANCE INSURANCE COMPANY, a California corporation; JOHN DOES I-XX, inclusive; and ROE ENTITIES I-XX, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR BREACH OF CONTRACT, VIOLATION OF ERISA, BREACH OF FIDUCIARY DUTY AND DEMAND FOR RELIEF ON BOND**<br><br>Date: N/A<br>Time: N/A |

The Plaintiff, the Board of Trustees of the Southern Nevada Glaziers and Fabricators Pension Trust Fund ("Plaintiff" and "Trust Fund"), acting by and through its attorneys, Christensen James & Martin, Chtd., hereby complains, asserts and alleges as follows:

## JURISDICTION & VENUE

1. This Court has jurisdiction of this case pursuant to Section 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(e)(1), which grants the United States District Courts exclusive jurisdiction over civil

actions brought by a fiduciary pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in Section 502(f) of ERISA, 29 U.S.C. § 1132(f).

2. This Court has jurisdiction of this case pursuant to Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a), which grants the United States District Courts original jurisdiction over suits for violation of contracts between an employer and labor organization in an industry affecting commerce, without respect to the amount in controversy or the citizenship of the parties.

3. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), in that this is the Judicial District in which the Plaintiff is administered.

**PARTIES**

5. The Trust Fund is an express trust created pursuant to a written declaration of trust; namely, the Agreement Establishing Plan for the Southern Nevada Glaziers and Fabricators Pension Trust Fund ("Trust Agreement"), consistent with § 302(c) of the LRMA [29 U.S.C. § 186(c)], existing "to implement a Section 401 (k) retirement plan ... for the benefit of all [covered employees]," within the meaning of ERISA, 29 U.S.C. §1002(37), (2) and (3).

6. The Board of Trustees and the individual Trustees of the Trust Fund are "named fiduciar[ies]," "plan administrator[s]" and "plan sponsor[s]" and each is an individual "fiduciary," within the meaning of 29 U.S.C. §§1102(a), 1002(16), & (21), with respect to collection of contributions due to the Trust Fund and related matters.

7. Defendant Marc Anthony Glazing Contractor, Inc. ("MAGC") is and/or was a California corporation doing business as a contractor and employer in California.

8. Defendant MAGC is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2), (6) and (7), 1002(5), (11) and (12).

9. Defendant Joe Manuel Leon, III ("Leon") is a natural person and individual believed to be residing in California and is listed in the State of California Contractors State License Board records as the Responsible Managing Officer/Chief Executive Officer/President of MAGC.

10. Leon is the primary manager, officer, director, owner, shareholder, principal and/or key employee of MAGC.

11. At all times material herein, Leon was a member, manager, officer, director, owner, shareholder, agent and/or individual whose employment duties with MAGC required decision making regarding the operations of MAGC, procurement and negotiation of contracts, hiring/firing of work force, directing labor relations, project management, keeping corporate records and company books, managing financial affairs, payment of expenses and accounts payable, tracking employee hours, preparing and processing payroll and remitting reports, contributions and payments to the Trust Fund for each hour of covered labor performed.

12. Leon caused MAGC employees to perform covered labor requiring employer contributions to the Trust Fund on account of such work. On prior occasions, Leon has submitted or caused to be submitted monthly reports reporting hours of covered labor performed by MAGC's employees and fringe benefit contributions to the Trust Fund.

13. Defendant Business Alliance Insurance Company ("BAIC") is a California corporation acting as a surety in the State of California that issued Surety Bond No. G61212808445 in the amount of $15,000.00 to MAGC with an effective date of December 28, 2016 ("Bond").

14. The true names and capacities, whether partnership, individual, corporate, company, associate or otherwise of John Does I-X, inclusive, and Roe Corporations I-X, inclusive, are unknown to the Plaintiff at this time and said Defendants are therefore sued by

fictitious names. The Plaintiff reserves the right to amend the Complaint to insert additional charging allegations, together with the true identities and capacities, when the same have been ascertained.

**GENERAL ALLEGATIONS**

15. At all times material herein, the International Union of Painters and Allied Trades, District Council 36, Glaziers, Architectural Metal and Glassworkers Local Union 636 ("Union") has been a labor organization representing employees in the construction industry in Southern California. The Union is an employee organization or labor organization in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(5), (6) and (7), 1002(4), (11) and (12).

16. The Southern California Glass Management Association ("Association") is a trade association representing union-affiliated glass and glazing contractors in the state of California. The Association represented MAGC in negotiations with the Union.

17. At all times material herein, MAGC has been a member of the Association and the Association has been authorized to act on MAGC's behalf and as its proxy in collective bargaining and negotiations with the Union.

18. On or around January 6, 2014, the Association entered into that certain Master Labor Agreement dated January 1, 2014 – May 31, 2017 ("MLA"), thereby binding MAGC by the terms and conditions of the MLA, and any extension and/or renewal thereof.

19. The MLA has not been terminated, remains in full force and effect and automatically renews from year to year by operation of its owns terms unless properly terminated by the Union, Association or MAGC.

20. MAGC may have also executed certain Subscription Agreements, Participation Agreements and Project Stabilization Agreements for certain public works projects in Southern California whereby MAGC agreed to be bound by the terms and conditions of the MLA for work performed on those specific projects. The MLA, Participation Agreements and Project Stabilization Agreements are collectively referred to

herein as "Labor Agreements."

21. By executing the MLA, the Association bound MAGC by the terms and provisions of the Trust Agreement utilized to create the Trust Fund, and any amendment thereof, which is incorporated by reference in the MLA and various Labor Agreements.

22. At all times material herein, MAGC was obligated by the terms of the Labor Agreements and Trust Agreement to submit written reports to the Plaintiff on a timely basis showing the identities of employees performing work covered by the Labor Agreements, and the number of hours worked by or compensated to these employees. Further, MAGC promised that it would pay fringe benefit contributions to the Plaintiff on a monthly basis and at specified rates for each hour worked by or compensated to its employees for performance of labor covered by the Labor Agreements. At all times material herein, MAGC was obligated to submit the monthly reports and pay the contributions to the Plaintiff at their administrative offices on or before the twentieth (20th) day of the month following the month in which the labor was performed.

23. As a result of the report and contribution obligations imposed therein, the Trust Fund is an intended beneficiary of the Labor Agreements.

24. Employer contributions are considered fund assets from the date they are due pursuant to the written terms of the Trust Agreement, whether or not they are actually paid, and must be held in trust by an employer until remitted to the Trust Fund. Employer contributions are components of the employees' compensation and do not belong to the employer. Employers have a fiduciary duty to ensure that employer contributions are properly and timely delivered to the Trust Fund.

25. The Labor Agreements and Trust Agreement provide that upon an employer's failure to remit contributions in a timely manner, liquidated damages (at the rate of 1.5% times the number of months late, up to 20%), interest (at the rate of 7%) and attorney's fees and costs (incurred to collect any delinquency) will be assessed and become due and owing to the Trust Fund, in addition to any unpaid contributions. *See also* 29 U.S.C. § 1132(g)(2).

26. On or around March 16, 2016, the Trust Fund and MAGC entered into (i) a Settlement Agreement and Mutual Release ("Settlement Agreement"), (ii) a Stipulation for Entry of Judgment by Confession against MAGC ("Stipulation"), and (iii) Judgment by Confession against MAGC ("Judgment by Confession") to resolve certain delinquencies owed by MAGC to the Trust Fund, including unpaid contributions, interest, liquidated damages and attorney's fees ("Settlement"). *See* Exhibit 1 – Settlement Agreement, Recitals.

27. The Settlement required that MAGC remit payments to the Trust Fund in the total amount of $21,332.08, plus interest on the declining balance at the rate of 7%, through the following monthly installment payments: (i) two (2) monthly payments each in the sum of $1,000.00; (ii) eleven (11) monthly payments each in the sum of $1,672.74; (iii) one (1) final monthly payment in the sum of $1,672.77. *See* Exhibit 1, Settlement Agreement, Paragraph 1(a)-(d).

28. In consideration for the Settlement, and upon receipt of the installment payments, the Trust Fund agreed to waive liquidated damages and attorney's fees owed by MAGC ("Contingent Waiver") in the sum of $7,642.62 ("Revoked Waiver Amount"), which was subsequently revoked, as explained below.

29. MAGC remitted all of the required payments. However, on or around August 16, 2017, ("Return Date"), and due to an accounting error, settlement payments in the sum of $6,238.48 were returned to MAGC ("Money Returned in Error").

30. Furthermore, settlement payment in the sum of $452.48 was applied to June 2017 contributions owed by MAGC, due to an accounting error ("Misapplied Money") (Money Returned in Error and Misapplied Money collectively referred to herein as "Settlement Delinquencies").

31. MAGC deposited the Money Returned in Error, failed to reimburse the Trust Fund for the Misapplied Money and used the money intended for the Trust Fund and its beneficiaries to pay other MAGC expenses and/or debts.

32. The Trust Fund made numerous demands on MAGC to repay the Settlement

Delinquencies.

33. On September 27, 2017, and in response to a demand for repayment of the Settlement Delinquencies, Leon stated that MAGC "will return the payment this week..." *See* email correspondence dated September 27, 2017 attached hereto as Exhibit 2. MAGC failed to remit payment for the Settlement Delinquencies.

34. On December 1, 2017, and in response to another demand for repayment of the Settlement Delinquencies, Leon responded by stating the following:

> Regarding the portion of the previous settlement payment that returned to MAGC in error by the new account administrator, upon receipt MAGC treated this money as found money and our bookkeeper allocated this amount to other open liabilities. **I am not disputing we owe this money back to the trust**, however we are a little crunched for cash as we are closing out 4 projects currently. Looking at our estimated cash flow for the next 2 months. I figure we could repay this money back to the trust by February 2018 in full. Please advise if this is acceptable to the trust.

*See* email correspondence dated December 1, 2017 attached hereto as Exhibit 3 (emphasis added).

35. The Trust Fund advised MAGC that this would not be acceptable, but offered to have MAGC enter into a payment plan for the money owed. MAGC did not respond to the Trust Fund's offer.

36. By operation of their failure to repay the Settlement Delinquencies, MAGC and Leon defaulted under the terms of the Settlement. *See* Exhibit 1 – Settlement Agreement, Paragraph 2. MAGC and Leon have not cured the default. Consequently, the Contingent Waiver was revoked and the Revoked Waiver Amount must be paid, plus attorney's fees and costs incurred by the Trust Fund to collect what is owed. *See* Exhibit 1 – Settlement Agreement, Paragraphs 3 and 10.

37. By operation of MAGC and Leon's default and failure to cure, the Settlement Delinquencies and the Revoked Waiver Amount (a.k.a. the "unpaid Judgment balance" as described in the Settlement) accrue interest at the rate of 7% from the Return Date (a.k.a.

-7-

"default date") until paid in full. *See* <u>Exhibit 1</u> – Settlement Agreement, Paragraph 2; Judgment by Confession, Paragraphs 8 and 13(a)-(d).

38. At all times material herein, Defendant Leon made decisions regarding contributions to the Trust Fund, including the decision not to repay the Settlement Delinquencies. Leon admitted the money is owed to the Trust Fund. Nevertheless, Leon intentionally declined to submit payment therefor.

39. The amounts that MAGC was required to remit to the Trust Fund became assets of the Plaintiff on the date they became due. Leon made decisions regarding the disposition of these trust assets, including the decision not to remit payment therefor to the Trust Fund, and was a fiduciary to the Trust Fund with a duty to ensure that the amounts owed were properly and timely remitted to the Trust Fund.

40. The unpaid Settlement Delinquencies constitute fund assets pursuant to the written terms of the Trust Agreement. To wit, "All Contributions required to the Fund by an Employer are deemed Trust Fund assets from the date of accrual (due date), whether paid, unpaid, segregated or otherwise traceable." *See* <u>Exhibit 4</u> – Amendment No. 4 to the Restated Agreement Establishing Plan for the Southern Nevada Glaziers and Fabricators Pension Trust Fund ("Trust Amendment"), Article I, Section 8.

41. Whereas Leon exercised authority or control over fund assets, he is a fiduciary of the Trust Fund under ERISA and jointly and severally liable to the Trust Fund for the Settlement Delinquencies, consistent with the express terms of the Trust Agreement. To wit:

> The term 'Fiduciary' means any person who exercises discretionary authority or discretionary control respecting . . . the management or disposition of the assets of this Trust . . . . Employer representatives responsible for remittance of Contributions to the Fund, which are Trust Fund assets from the accrual date (due date) pursuant to this Trust Agreement, are deemed Fiduciaries of all such Contributions until paid to the Fund.

*See* <u>Exhibit 4</u> – Trust Amendment, Article I, Section 20.

42. By failing to repay the Settlement Delinquencies, MAGC and Leon breached

-8-

the Settlement Agreement, Labor Agreements and Trust Agreement and Leon breached his fiduciary duty.

43. MAGC owes to the Trust Fund the Settlement Delinquencies, the Revoked Waiver Amount, interest at the rate of 7% from the Return Date and attorney's fees and costs from the Return Date, in the total sum of $18,907.65, through the date of filing this Complaint, plus any additional accrued interest, attorney's fees and costs ("Total Claims").

44. The money owed by MAGC is properly payable out of the proceeds of the Bond.

**FIRST CAUSE OF ACTION**
[Breach of Contract – 29 U.S.C. § 1132 – MAGC]

45. The Plaintiff herein restates and realleges the above allegations.

46. The failures of MAGC to repay the Settlement Delinquencies constitute violations of ERISA and material breaches of the Settlement Agreement, Labor Agreements and Trust Agreement.

47. By failing to repay the Settlement Delinquencies, MAGC is contractually delinquent to the Plaintiff and is obligated by the Settlement Agreement, Labor Agreements, Trust Agreement and ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145, to pay the Plaintiff the Total Claims.

48. By the Settlement Agreement, Labor Agreements, Trust Agreement and ERISA, 29 U.S.C. §§ 1132(g)(2), MAGC agreed to be deemed contractually delinquent if and when it failed to properly pay contributions and/or other contract damages when due. MAGC is delinquent to the Plaintiff and is obligated by the Settlement Agreement, Labor Agreements and/or Trust Agreement to repay the Plaintiff the Total Claims.

49. The Plaintiff is entitled to recover as damages from MAGC the Total Claims, plus accruing interest, attorney's fees and costs of suit pursuant to the Settlement Agreement, Labor Agreements and Trust Agreement.

50. MAGC's actions have required the Plaintiff to retain legal counsel to enforce

their rights under the Settlement Agreement, Labor Agreements and Trust Agreement. The Plaintiff is entitled to recover attorney's fees and costs from MAGC.

51. The actions of MAGC in failing to repay the Settlement Delinquencies constitute violations of ERISA [29 U.S.C. § 1001 *et seq*.]. The contract breaches and violations of ERISA identified herein harm the Plaintiff and its participants because they placed at risk the Plaintiff's ability to provide required benefits to its beneficiaries. The Plaintiff's remedies at law are not sufficient to adequately compensate the Trust Fund or its beneficiaries from past harm caused by said violations, or to protect them from the harm or threat of harm caused by similar future violations. Plaintiff is likely to prevail on the merits of its claims. Plaintiff is entitled to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) affirmatively compelling MAGC to pay Plaintiff the Total Claims.

### **SECOND CAUSE OF ACTION**
[Violation of ERISA]

52. The Plaintiff herein restates and realleges the above allegations.

53. By failing to repay the Settlement Delinquencies to the Plaintiff in accordance with the Labor Agreements and Trust Agreement, MAGC has violated Section 515 of ERISA [29 U.S.C. § 1145]. In accordance with the terms of the Labor Agreements and Trust Agreement, and pursuant to Sections 502(g)(2) and 515 of ERISA [29 U.S.C. §§1132(g)(2) and 1145], the Plaintiff is entitled to payment of Total Claims, and all additional interest, attorney's fees and costs incurred in enforcing the terms of the Trust Agreement, and such other legal and equitable relief as the Court deems appropriate.

54. The contract breaches and violations of ERISA identified above harm the Plaintiff and place at risk the Plaintiff's ability to provide required employee benefits to their beneficiaries.

55. The Plaintiff's remedies at law are not sufficient to adequately compensate the Plaintiff or its beneficiaries from past harm caused by said violations, or to protect them from the harm or threat of harm caused by similar future violations.

-10-

56. The Plaintiff is likely to prevail on the merits of their claims.

57. The Plaintiff is entitled to injunctive relief affirmatively compelling MAGC to repay the Total Claims.

### THIRD CAUSE OF ACTION
[Breach of Fiduciary Duty – 29 U.S.C. §§ 1002, 1104, 1109, 1132 – Leon]

58. Plaintiff herein restates and realleges the above allegations.

59. Leon is responsible for tracking employee hours, preparing and processing payroll, remittance reports, making contributions and payments to the Trust Fund for each hour of covered labor performed by MAGC's employees, and ultimately making all financial decisions on behalf of MAGC.

60. Contributions owed to the Plaintiff, including the Settlement Delinquencies, became assets of the Plaintiff on the date that they became due.

61. Leon made determinations as to how funds owed to the Plaintiff, including the Settlement Delinquencies, were to be handled, utilized, segregated, distributed, and/or paid.

62. Leon exercised authority and control relating to the management or disposition of the Plaintiff's assets established pursuant to the terms and provisions of the Labor Agreements, Trust Agreement, governing plan documents, 29 C.F.R. § 2510.3-102 and 29 U.S.C. §§ 1002, 1104, 1109 & 1132.

63. Leon is a fiduciary to the Plaintiff for purposes of ERISA.

64. The actions of Leon in failing to segregate trust fund assets from MAGC's assets and make required contributions to the Plaintiff materially harmed the Plaintiff, placed the beneficiaries of the Plaintiff at risk with regard to their benefits and constitute a breach of his fiduciary duties to the Plaintiff and the Plaintiff's beneficiaries.

65. The Plaintiff is entitled to recover from Leon a sum equal to the Total Claims.

### FOURTH CAUSE OF ACTION
[Demand for Relief on Bond]

66. Plaintiff herein restates and realleges the above allegations.

67. BAIC issued the Bond as a condition for MAGC to maintain its Contractor's License.

68. The Plaintiff is an intended third-party beneficiary under the Bond.

69. The delinquencies and amounts owed by MAGC asserted herein are properly payable out of the proceeds of the Bond.

70. The proceeds of the Bond must be paid to the Plaintiff in full or partial satisfaction, as the case may be, of MAGC's obligations owed to the Plaintiff or as damages caused by MAGC's failure to properly act in accordance with the Settlement Agreement, Labor Agreements, Trust Agreement and/or the law, subject only to the penal limit on the Bond and/or the statutory limits on payment of fringe benefit contributions from the Bond.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for Judgment against the Defendants, and each of them, as follows:

1. For the Court's Order enjoining the Defendants from failing to repay the Settlement Delinquencies;

2. For the Court's Order compelling the Defendants to repay the Settlement Delinquencies (in the sum of $6,690.96) and pay the Revoked Waiver Amount (in the sum of $7,642.62);

3. For damages for breach of contract, violation of ERISA and/or breach of fiduciary duty in an amount to be proven at trial;

4. For accrued interest on the Money Returned in Error from the Return Date until paid (as of the date of this filing, the amount owed is $448.07);

5. For Plaintiff's reasonable attorney's fees for having to bring this action to compel repayment, compliance with the Settlement Agreement, Labor Agreements, Trust Agreement and ERISA and contribution recovery with associated damages from the Return Date (as of the date of this filing, the amount owed is $3,726.00);

6.      For Plaintiff's costs of suit incurred herein from the Return Date (as of the date of this filing, the amount owed is $400.00);

7.      For such additional relief as may be provided for by 29 U.S.C. § 1132; and

8.      For such additional relief as this Court may deem just and proper.

DATED this 26th day of January, 2018.

CHRISTENSEN JAMES & MARTIN, CHTD.

By: */s/ Kevin B. Archibald*
Kevin B. Archibald, Esq. (13817)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Tel: (702) 255-1718
Fax: (702) 255-0871
Email: kba@cjmlv.com
*Counsel for Plaintiff Board of Trustees of the Southern Nevada Glaziers and Fabricators Pension Trust Fund*

-13-